(758 P.2d 247)

No. 61,276

STATE OF KANSAS, *Appellant,* v. DENNIS E. GRAHAM, *Appellee.*

—

Opinion filed July 22, 1988.

*Debra Barnett* and *Julie Wright Connolly,* assistant district attorneys, *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, for appellant.

No appearance by appellee.

Before BRAZIL, P.J., J. STEPHEN NYSWONGER, District Judge, assigned, and PAGE W. BENSON, District Judge Retired, assigned.

BRAZIL, J.: The State appeals the trial court's ruling dismissing a habitual violator petition due to the failure of the Kansas Department of Revenue, Division of Vehicles, to certify the defendant's record forthwith under K.S.A. 8-286 and the failure of the Sedgwick County District Attorney to file the petition

within the one-year statute of limitation. K.S.A. 60-514. We reverse.

On June 5, 1987, the Sedgwick County District Attorney's office filed a petition seeking to have Dennis Graham declared a habitual violator under K.S.A. 1987 Supp. 8-285. Attachments to the petition indicated the Kansas Department of Revenue, Division of Vehicles (Division), as required by K.S.A. 8-286, had certified to the district attorney on August 21, 1986, that its records showed Graham was a habitual violator under 8-285. After receiving a new address for Graham, the Division again certified those records on March 10, 1987.

At the hearing on the petition, Graham stipulated he had been convicted as follows: (1) on November 21, 1983, for driving while his license was suspended; (2) on February 24, 1984, for driving under the influence of alcohol and/or drugs and while his license was suspended; and (3) on December 26, 1985, for leaving the scene of a non-injury accident. These convictions satisfy the requirements of K.S.A. 1987 Supp. 8-285 to make Graham a "habitual violator." However, Graham claimed the State had taken too long to prosecute him under K.S.A. 8-286. He also claimed the last conviction was not certified as required by 8-286. The trial court dismissed the petition, holding the Division had not certified the records "forthwith" as required by K.S.A. 8-286 and the petition had been filed too late, after the one-year statute of limitation of K.S.A. 60-514 had run.

In its brief, the State asserts for the first time that Graham's third conviction occurred not on December 26, 1985, but instead on June 26, 1986, allegedly the date Graham was sentenced following the conviction. However, as the State concedes, this is not clear from the record on appeal. Thus, we will accept December 26, 1985, the date stipulated by the parties at trial, as the date of the last conviction.

1. Did the Division fail to certify Graham's records forthwith? K.S.A. 8-286 provides in pertinent part:

"Whenever the files and records of the division shall disclose that the record of convictions of any person is such that the person is an habitual violator as prescribed by K.S.A. 8-285 the division forthwith shall certify a full and complete abstract of such person's record of convictions to the district or county attorney of the county where such person resides, as disclosed by the records of the division . . . . Upon receiving said abstract, the district or county attorney forthwith shall

commence prosecution of such person in the district court of such county, alleging such person to be an habitual violator."

K.S.A. 1987 Supp. 8-285 defines habitual violator as a person who has been convicted three or more times of certain listed offenses within a five-year period. In reaching its decision to dismiss the petition here, the trial court explained its reasoning as follows:

"The legislature has established this as a civil redress of a wrong . . . [and] even though it's captioned as a civil case, carries literally a penal result. Now, the statute says, and I quote, 'The Division forthwith shall certify.' . . . Not meaning to be facetious, I don't think any way that it might have been scrivened would make any difference in the legislature's intent, and that is that it is to be timely lodged against a citizen. Now, this was not lodged for a period of approximately 18 months. . . . I feel that the Vehicle Department should be strictly required to comply with the law.

"I'm going to make the finding that the Motor Vehicle Department has not complied forthwith as declared by K.S.A. 8-28[6], and that this show cause order should be and is dismissed."

By counting all eighteen months from Graham's third conviction to the filing of the petition, the court considered not only the delay in the Division's action, which included the delay of more than six months between the Division's first and second certification apparently caused by an incorrect or out-of-date address in the Division's records, but also the district attorney's delay in filing the petition after receiving the Division's second certification of Graham's record. Regarding Graham's address, we note that K.S.A. 8-248 requires the holder of a driver's license to notify the Division in writing of his new address within ten days whenever he moves. See *State v. Moffett*, 240 Kan. 406, 408, 728 P.2d 1330 (1986) (Division should send notice of suspension to address shown on application or license or to last address received under K.S.A. 8-248).

One previous case has considered the significance of the legislature's use of "forthwith" in K.S.A. 8-286. In *State v. Garton*, 2 Kan. App. 2d 709, 709-10, 586 P.2d 1386 (1978), Garton was in prison when the Division certified his record to the county attorney, who waited thirteen months until Garton was released to file the habitual violator petition. In response to Garton's claim the county attorney had not followed K.S.A. 8-286, the court said:

"The stated purpose of the act (K.S.A. 8-284) is not to benefit a habitual

violator; rather it is to provide maximum safety for all people who use the public highways by depriving habitual violators of the privilege of operating motor vehicles on the public highways of this state. We view the term *forthwith* as being a directive to the county attorney to carry out his duty to the public by removing habitual violators from public highways at the earliest opportunity. The failure to do so could possibly result in a mandamus or ouster action. We do not view the legislative intent as being a directive to discharge the defendant if the county attorney fails to file the action forthwith. As we view it, the word forthwith is directory and not mandatory, for it gives the county attorney directions for the proper, orderly and prompt conduct in carrying out legislative intent and is not followed by words of absolute prohibition. *Wilcox v. Billings,* 200 Kan. 654, 657, 438 P.2d 108 (1968).

"In the absence of substantial prejudice, the lapse of time between a criminal act and the filing of charges is no defense if the charge is filed prior to the expiration of the statute of limitations. *United States v. Marion,* 404 U.S. 307, 30 L.Ed.2d 468, 92 S.Ct. 455 (1971); *United States v. Freeman,* 412 F.2d 1181 (10th Cir. 1969); *Walters v. Williams,* 474 P.2d 661 (Okla. Crim. App. 1970). Although not purely a criminal case, the case at bar was well within the statute of limitations." 2 Kan. App. 2d at 710-11.

This interpretation of "forthwith" would apply to the statute's directions to the Division as well as to district and county attorneys. In our case, Graham did not claim he had been prejudiced by the delay between his third conviction and the filing of the petition against him. Under *Garton,* absent some prejudice, dismissal is not an appropriate remedy for the Division's tardiness. The trial court was wrong to dismiss the petition on the ground the Division had not forthwith certified its records to the district attorney.

Furthermore, it is questionable that the prejudice exception referred to in *Garton* is applicable to habitual violator actions. Five years after *Garton* was decided, our Supreme Court held that a proceeding under K.S.A. 8-284 *et seq.* is civil, so the State's appeal was not barred although the trial court had found the evidence against the defendant to be insufficient. *State v. Boos,* 232 Kan. 864, 867-70, 659 P.2d 224 (1983). Thus, reliance on the prejudice exception barring prosecution in criminal cases before the statute of limitation had run would not be appropriate.

In civil cases, "[t]he rights of a state are not lost through laches, estoppel or inaction of public officials." *Riggan v. Director of Revenue,* 203 Kan. 129, 131, 453 P.2d 52 (1969). In *Riggan,* the court held the State could resume efforts to collect unpaid sales tax from a retailer even after taking no action for over seven years. 203 Kan. 129, Syl. ¶ 3. The State's delay in filing the

petition against Graham cannot serve to protect him from this action unless it is barred by some statute of limitation.

2. Is the State's action barred by the one-year statute of limitation, K.S.A. 60-514?

Statutes of limitation do not run against the State unless specifically provided by statute. *State ex rel. Stephan v. GAF Corp.*, 242 Kan. 152, 162-63, 747 P.2d 1326 (1987). "Statutes of limitation are measures of public policy and are entirely subject to the will of the legislature." 242 Kan. at 162-63. K.S.A. 60-521 provides in part:

> "As to any cause of action accruing to the state, . . . which cause of action arises out of any proprietary function or activity, the limitations prescribed in this article shall apply to actions brought in the name or for the benefit of such public body in the same manner as to actions by private parties, except in [certain actions not relevant here]."

Taken together, the general rule and 60-521 mean the civil statutes of limitation run against the State when its cause of action arises out of a proprietary function but not when the cause of action arises out of a governmental function. *State Highway Commission v. Steele*, 215 Kan. 837, 528 P.2d 1242 (1974).

The trial court here held the State's cause of action against Graham was barred by K.S.A. 60-514, which provides in part: "The following actions shall be brought within one (1) year. . . . (3) An action upon statutory penalty or forfeiture."

In *Board of County Commissioners v. Lewis*, 203 Kan. 188, 190-95, 453 P.2d 46 (1969), the court held K.S.A. 60-521 and consequently K.S.A. 60-514(3) never apply to counties or the State because they do not engage in any proprietary activities, and added in dicta the activity at issue was governmental in any case. The specific holding was effectively overruled a short time later in *Carroll v. Kittle*, 203 Kan. 841, 845-51, 457 P.2d 21 (1969), where the court held the State would no longer be protected by governmental immunity when it was engaged in proprietary activities, thus recognizing the State does engage in such activities. However, *Lewis* is still authority for the view K.S.A. 60-514(3) does not apply to the State when its cause of action arises out of a governmental activity.

In *State ex rel. Schneider v. McAfee*, 2 Kan. App. 2d 274, 276, 578 P.2d 281, *rev. denied* 225 Kan. 845 (1978), this court said:

> "Governmental functions are those which are performed for the general

public with respect to the common welfare and for which no compensation or particular benefit is received, while proprietary functions are exercised when an enterprise is commercial in character or is usually carried on by private individuals or is for the profit, benefit or advantage of the governmental unit conducting the activity."

The purposes of the habitual violator statutes, K.S.A. 8-284 *et seq.*, are:

"(a) To provide maximum safety for all persons who travel or otherwise use the public highways of the state;

"(b) To deny the privilege of operating motor vehicles on such highways to persons who by their conduct, attitude and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of this state, the orders of its courts and the statutorily required acts of its administrative agencies; and

"(c) To discourage repetition of criminal acts by individuals against the peace and dignity of this state . . . and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual violators who have been convicted repeatedly of violations of traffic laws." K.S.A. 8-284.

Given these purposes, it is clear the State's cause of action here arises out of the governmental function of regulating highway safety rather than any proprietary function. The civil statutes of limitation are therefore not applicable to this suit.

Another potentially applicable statute of limitation is K.S.A. 1987 Supp. 21-3106. It indicates there is no time limit for murder, states a special time limit for certain sex crimes against persons under age sixteen, and then provides: "(3) Except as provided by subsection (4), a prosecution for any other crime must be commenced within two years after it is committed." Subsection (4) provides for tolling the limitation period in certain situations. However, K.S.A. 1987 Supp. 21-3105 provides the definition of "crime" which applies to 21-3106(3). It states in pertinent part:

"A crime is an act or omission defined by law and for which, upon conviction, a sentence of death, imprisonment or fine, or both imprisonment and fine, is authorized or, in the case of a traffic infraction, a fine is authorized. Crimes are classified as felonies, misdemeanors and traffic infractions."

K.S.A. 8-287 provides in part: "It shall be unlawful for any person to operate any motor vehicle in this state while any court order declaring such person to be an habitual violator and prohibiting such operation remains in effect." K.S.A. 1987 Supp. 8-288 provides in part:

"(a) No license to operate a motor vehicle in Kansas shall be issued to a convicted habitual violator:

"(1) For a period of three years from the date of the order of the court finding the person to be a habitual violator; and

"(2) until the privilege of the person to operate a motor vehicle has been restored.

"(b) At the expiration of three years from the date of any final order of a court finding a person to be a habitual violator and directing the person not to operate a motor vehicle in this state, the person may petition the court in which the person was convicted to have the privilege to operate a motor vehicle in this state restored. Upon such petition and for good cause shown, the court, in its discretion, may restore the privilege and may place restrictions on the privilege [as specified by other statutes]."

As declared by 8-287 and 8-288, the result of being found to be a habitual violator is not a fine, imprisonment, or death, so the Habitual Violator Act, K.S.A. 8-284 *et seq.*, does not define a "crime" subject to K.S.A. 1987 Supp. 21-3106(3).

Except for K.S.A. 1987 Supp. 8-285, which defines habitual violator as a person with three or more convictions of specified offenses within a five-year period, we find no other applicable statute of limitation.

The trial court's order of dismissal is reversed, the State's petition is reinstated, and the case is remanded for further proceedings.